PARKER, J.,
delivered the resolutions of the court. The first question propounded to this court, involves an important point of practice as well as of principle, which seems to have been differently understood in various parts of the state. We have carefully considered the statute for the relief of insolvent debtors, under which the question arises, 1 Rev. Code, ch. 134, l 31, 2, 3, 4, pp. 336, 7, 8. Anda large majority of us are of opinion, that the magistrates, under the circumstances stated in the question, have no discretion to administer or not to administer the oath of insolvency, but are bound to do so, and to discharge the prisoner. The provision in the statute was made “for the relief of insolvent .debtors,” and “to prevent the long imprisonment of unfortunate people, which can be of no benefit, but rather a disadvantage, to their creditors.” The conditions imposed are, that the debtor shall deliver in a schedule of his estate, take an oath of a very solemn and comprehensive character, which is prescribed in terms, and under the directions of the court, or persons before whom such oath of insolvency shall be taken, transfer and deliver all the personal ^estate contained in such schedule, and convey all the real estate therein to the sheriff. On complying with these conditions, he is entitled to his ■warrant of discharge. If the schedule does not contain all the debtor’s property, but he fraudulently conceals any part of it, he is liable to the penalties of perjury; and all the estate contained in it, and any other estate which may be discovered to belong to him, is absolutely vested in the sheriff, and means are provided, in certain cases, for his recovering it. These are the sanctions of the law, and seem to be the only ones intended to be provided, to ensure a due compliance with that clause of it, which directs that the schedule shall contain the whole of the property of the debtor. No discretion is reserved to the court or justices, to refuse to administer the oath in consequence of their believing he is about to commit a perjury; nor are any means provided, by which they can inquire into the truth or falsehood of the schedule. They cannot summon witnesses to ascertain the fact; nor have they the power to propound any question to the prisoner himself; or to administer any other oath than the one prescribed in the statute. They act, indeed, merely as ministerial officers, designated by law to perform a prescribed duty. It is not probable, that the legislature would ever have confided to two justices of the peace, the power to decide, without appeal, and without the intervention of a jury, the delicate and often intricate questions, which might arise under a different construction of this law. If the justices can inquire into the fraud, and on that ground refuse to administer the oath, as they have done in the case at bar, their decision is final, and the prisoner must remain in jail, until their scruples are satisfied; and thus, the question of liberty or perpetual imprisonment, is made to depend upon the opinion of two individuals, who have not even the means of inquiring fully into the facts. We cannot believe, that such was the intention of the legislature, or that the words it has used are fairly susceptible of such a construction. In confirmation of this idea, it may be proper to mention, lhat *during the session of 1826-7, a bill was introduced into the house of delegates, founded on the admission, that a prisoner complying with the other requisites of the law, had a right to take the oath of an insolvent debtor, and to be discharged; the fourth section of which provided “that previously to the administering of any oath of insolvency to any debtor, it shall be lawful for any creditor by judgment, who may be affected thereby, his attorney or agent, to propound to such debtor any question or questions, touching his estate, rights, or credits; and if from his answers, or refusal to answer or any legal evidence, the court or justices, before whom the proceeding may be, shall believe that the debtor has fraudulently concealed, or disposed of any part of his estate to the injury of such creditor, or that the schedule offered is not a schedule of his whole estate, he shall not be allowed to take the oath of insolvency; and every such debtor may require a jury to be empaneled, to try the question, whether he hath been guilty of any fraud or concealment as aforesaid or not, or whether such schedule be a schedule of his whole estate,” &c. It further provided, that if the application was made in court, a jury should be empaneled forthwith; but if before justices in the country, upon his finding bail to abide the result of the trial, he was to be discharged from custody; the trial to be ‘had at the next court, either county or circuit, at the election of the debtor; and, if the jury found him guilty, he should not be allowed to take the oath, until all the estate which he might have fraudulently concealed or disposed of, should be surrendered in the mode prescribed by law. The movers and supporters of this bill, obviously, took it for granted, that the powers thereby proposed to be conferred, had not before been given to the justices or the court. It was advocated and opposed upon that assumption: and, notwithstanding the safeguards it provided against the abuse of the power, it was rejected by the legislature, in consequence, it is believed, of the impression, that the sanctions of the law were already sufficient.
*We, therefore answer to the 1st question propounded to us by the circuit court, that the magistrates, under the circumstances Stated, had no discretion upon the subject, but ought to have administered the oath, and discharged the prisoner: To the 2d, that the return of the justices is insufficient to liberate them from further proceedings on the mandamus: To *502 the 3d, that a mandamus does lie from the circuit court to county justices, to compel them to administer the oath of insolvency and discharge the prisoner; for which we refer to the decision and reasoning of the court, in the case of The Commonwealth v. Justices of Fairfax, 2 Virg. Ca. 9. And, lastly, that the circuit court ought to award a peremptory mandamus, - unless (as has been intimated) the applicant has been already discharged from custody.
STUART, JOHNSTON and UPSHUR, J., dissented.